**IN THE COURT OF APPEALS OF IOWA**

No. 14-1018
Filed October 29, 2014

**IN THE INTEREST OF A.R.,**
**Minor Child,**

**D.R., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Cerro Gordo County, Annette L.

Boehlje, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Dylan Thomas, Mason City, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, Carlyle D. Dalen, County Attorney, and Nichole M. Benes,

Assistant County Attorney, for appellee State.

Mark Young, Mason City, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**PER CURIAM.**

A father appeals the termination of his parental rights to his child, A.R., born in September 2009. We review his claims de novo. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e) (2013). Under that paragraph, termination may be ordered when there is clear and convincing the child has been adjudicated a child in need of assistance (CINA), the child has been removed from the physical custody of the parent for a period of at least six consecutive months, and the parent has "not maintained significant and meaningful contact with the child during the previous six consecutive months and [has] made no reasonable efforts to resume care of the child despite being given the opportunity to do so." Iowa Code § 232.116(1)(e). However, on appeal, the father challenges a ground for termination not found by the juvenile court, paragraph (h) of section 232.116(1), and not the actual ground found by the court, paragraph (e). Consequently, the father has waived any claim of error on the actual ground found by the juvenile court. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) (stating "our review is confined to those propositions relied upon by the appellant for reversal on appeal"); Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Nevertheless, because the State clearly met its burden in establishing the ground set forth in Iowa Code section 232.116(1)(e) as to the father, we briefly address that ground.

First, there is clear and convincing evidence the father has not maintained significant and meaningful contact with the child. Significant and meaningful

contact is an affirmative duty that requires "a genuine effort to complete the responsibilities prescribed in the case permanency plan." Iowa Code § 232.116(1)(e)(3). Here, the father has a significant history of substance abuse, mental health issues, and domestic violence. The Iowa Department of Human Services (DHS) has essentially provided services to this family since the child's birth in 2009. Nevertheless, this child has continued to be subjected to domestic-violence incidents between the parents, including a disturbing 2013 episode wherein the father attempted to strangle the mother in front of the child. Despite the ongoing domestic-violence issues, the father had still not completed the recommended batterer's education program at the time of the termination hearing, nor had he and the mother participated in any couples' therapy.

The father pled guilty to the assault charges that followed the incident and was placed on probation in approximately August 2013. However, a few months later, the father was charged with harassment in the first degree after he threatened the life of the DHS social worker assigned to his case, as well as threatening the social worker's family. The father pled guilty to that charge and spent sixty days in jail, where he had no communication with the child. After being discharged, the father was placed in a residential facility due to ongoing emotional issues. Only since that time has the father participated in substance abuse and mental health treatment. We, like the juvenile court, find his recent participation was motivated not by his desire to be reunited with the child, but rather his wish not to be placed in prison. The father did not even attend the termination-of-parental-rights hearing, and the mother testified it was her and the father's intent to leave Iowa in hopes the child could somehow be returned to the

care of the child's paternal grandparents. The father's efforts to "maintain communication" and "a place of importance in the child's life" have been inconsistent and ineffective. *Id.* The father has not at any time put the child's needs before his own. There is therefore clear and convincing evidence to satisfy the requirements of section 232.116(1)(e).

The father also asserts on appeal the juvenile court erred in terminating his parental rights because "it is in the best interests of the child for the court to grant [the] paternal grandparents a guardianship." The father's parents intervened in these proceedings and do not appeal the court's ruling here. Even assuming arguendo the father possesses standing to assert this claim, we note that the juvenile court thoroughly considered the option of placing the child in the guardianship of the father's parents and concluded it was not in the child's best interest. The court concluded the grandparents would set no clear boundary between the child and the father. Thus, the child would remain subject to the father's "abusive drug-fueled" lifestyle. On our de novo review, we agree.

We agree with the district court that termination of the father's parental rights was in the child's best interests under the facts of this case. In making this determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Additionally, "we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.M.*, 843 N.W.2d at 113.

Here, the father has long-standing issues with substance abuse, mental illness, and domestic violence, the combination of which has endangered the child. Despite ongoing services from the DHS, the father failed to show the kind of progress during the case while the child has been out of his care to merit prolonging the uncertainty. Our legislature has constructed a time frame to balance a parent's efforts against the child's long-term best interests. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). In this case, that balance has reached the tipping point toward providing this child permanency. The child is doing well in foster care, and all evidence suggests the child will continue to thrive in the foster family's care. The foster family wishes to adopt the child. Taking into account the relevant factors, we conclude termination of the father's parental rights is in the child's best interests. Accordingly, we affirm the juvenile court's ruling terminating the father's parental rights.

**AFFIRMED.**